OPINION
This appeal, having been heretofore placed on the accelerated calendar, is being considered pursuant to Appellate Rule 11.1(E) and Local Rule 12. Pursuant to Local Rule 12(5), we have elected to issue a full opinion in lieu of a judgment entry.
The plaintiff-appellant, State of Ohio, appeals the decision of the Logan County Court of Common Pleas suppressing inculpatory statements made by the defendant-appellee, Rickey Gene Weeks ("the appellee"). For the following reasons, we reverse the judgment of the trial court.
The facts and procedural history of the case are as follows. On or about 3:22 a.m. on July 30, 1998, two police officers from the Bellefontaine Police Department were dispatched to the Mad River Shell Station located in Bellefontaine, Ohio, to investigate an alleged rape. Upon arriving at the Shell station, Officer Thomas Meek met and spoke with the alleged victim, an adult male. The victim informed the officer that he had been the victim of a rape, and that the perpetrator was still in the area.
The appellee, a person matching the description of the suspect, was observed a short distance away. The appellee was transported to the Shell station where he was read his Miranda rights. Officer Meek questioned the appellee. The appellee denied having had any physical contact with the victim. While at the Shell station, the victim positively identified the appellee as the alleged attacker. The appellee was placed under arrest.
At approximately 4:03 a.m., the appellee was transported to the Bellefontaine Police Department whereupon he was secured in a holding room until approximately 8:16 a.m. The appellee was then transported to the Logan County Jail. Shortly thereafter, the appellee was transported back to the Bellefontaine Police Department for a formal interview.
Prior to the interview, the appellee was read a form containing his Miranda rights, which he signed. At approximately 8:41 a.m., Officer Meek commenced the interview. During the interrogation, the appellee initially denied having had any physical contact with the victim. Later in the interview, however, the appellee admitted to having had consensual sex with the victim earlier that morning.
In November of 1999, the appellee was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree.[1] On January 28, 2000, the appellee filed a motion to suppress the statements he had made during the interview. In his motion, the appellee argued that the statements had been improperly induced and were thus involuntary and inadmissible at trial. A hearing was held on the matter on February 29, 2000. By judgment entry of March 10, 2000, the trial court granted the appellee's motion to suppress.
The State now appeals, asserting the following sole assignment of error.
 Assignment Of Error The court erred in finding that the statement of the officer was a representation that the acts of the defendant were not criminal and subsequent admission to the acts by the defendant was not voluntary.
In its sole assignment of error, the State of Ohio maintains that the trial court erred in granting the appellee's motion to suppress. For the following reasons, we agree.
Initially, we note that appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v. Martinez (C.A.11, 1992), 949 F.2d 1117,1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g.,State v. Carter (1995), 72 Ohio St.3d 545, 552; State v. Mills
(1992), 62 Ohio St.3d 357, 366, certiorari denied (1992),505 U.S. 1227, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20. The weight of the evidence is also primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Smith (1997), 80 Ohio St.3d 89, 105; State v.Brooks (1996), 75 Ohio St.3d 148, 154; Fanning,1 Ohio St.3d at 20.
A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Anderson (1995),100 Ohio App.3d 688, 691. That is, we must review the trial court's application of the law de novo. Id.
Once the admissibility of a confession has been challenged by way of a motion to suppress, the prosecutor has the burden to prove by a preponderance of the evidence that the statement was given voluntarily. Lego v. Twomey (1972), 404 U.S. 477, 489;State v. Melchior (1978), 56 Ohio St.2d 15, 25. "The question of voluntariness is a question of law. Consequently, an appellate court must arrive at its own conclusion as to whether a given confession was voluntary by reviewing the facts of the case."State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, unreported.
In determining whether a defendant's confession was involuntarily induced, the court should consider the totality of the circumstances. State v. Bays (1999), 87 Ohio St.3d 15, 22, citing State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, judgment vacated on other grounds (1978),438 U.S. 911. Circumstances to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Id. Moreover, the Supreme Court of Ohio in Statev. Cooey (1989), 46 Ohio St.3d 20, 28, certiorari denied (1991),499 U.S. 954, has determined that "[t]he use of an `inherently coercive tactic' during interrogation is a prerequisite to a finding of involuntariness. Such tactics include , e.g., physical abuse, threats, or deprivation of food, medical treatment, or sleep." See, also, Colorado v. Connelly (1986), 479 U.S. 157.
Having set forth the applicable law with regard to voluntary confessions, we must now determine whether the trial court erred in granting the appellee's motion to suppress.
In the case herein, the appellee's motion to suppress concerns the July 30, 1998, interview conducted by Officer Meek of the Bellefontaine Police Department.[2] The appellee asserts that Officer Meek had improperly coerced him into believing that if the sexual contact with the victim had been consensual, he would not be charged with a criminal offense and would be released from custody.[3] The appellee alleges that upon learning the foregoing, he informed the officer that on the morning of the alleged rape he had engaged in consensual sex with the victim.
At the suppression hearing held on February 29, 2000, Officer Meek testified on direct examination as follows:
 1. State: "You never told him that, "If it was consensual sex, that's okay, it's not a crime?"
 2. Officer Meek: "I did state that. If it were consensual sex, that was different. I didn't use the words, `[t]hat's not a crime.'"
 3. State: "You used the words, `[I]f it's consensual sex, that's different'"?
4. Officer Meek: "That's correct."
On cross examination, Officer Meek testified, as follows:
 1. Mr. Triplett: "All right. There came a time then that you said to Mr. Weeks that if this was a consensual encounter, that's a different matter?"
2. Officer Meek: "Yes, sir."
* * *
 1. Mr. Triplett: "All right. In fact, you said to Mr. Weeks, `If it's consensual, that's different. We can wrap this up and all get of here.' Didn't you?"
2. Officer Meek: "Yes, I did."
 3. Mr. Triplett: "And it was after you said that to him that he then said, all right, here's what happened and he described a consensual sex act with Mr. Johnson?"
4. Officer Meek: "Yes, he did."
The appellee argues the foregoing exchange affirmatively establishes that Officer Meek had misinformed him and, by doing so, had improperly induced him into believing that if the sexual contact with the victim had been consensual, he would not be charged with a criminal offense and would be released from custody.
By judgment entry of March 10, 2000, the trial court held, in pertinent part, as follows:
 * * * [T]he real coercive and impermissible tactic in this case involves the statement by the officer to the Defendant. The officer said that if this was a consensual sexual act, `we can wrap this up and get out of here.' The officer admitted that the reasonable inference would be that he would be released from custody and the interrogation would end.
While the ultimate test whether or not this is admissible is whether or not the statement was voluntary, the Court finds that the representation by the police that an act is not criminal, whether or not the police realize that it is, and the subsequent admission by the Defendant of the act, is clearly a tactic that calls into question the voluntariness of the statement. When the police hold a person in isolation for seven hours without food and drink and the Defendant has the opportunity to escape that by admitting an act that he is told is not illegal, this Court finds that under such circumstances that the [sic] tactics are coercive police action, that the statement is involuntary in that the Defendant's will is overborne and the statement is untrustworthy.
After reviewing the record, we cannot in good conscience find that the appellee's statements were the product of improper police conduct. We will initially address the trial court's finding that Officer Meek had improperly induced the appellant into making inculpatory statements.
A misstatement of the law may cause a confession to be involuntary. State v. Robinson (Jan. 11, 1995), Summit App. No. 16766, unreported. In State v. Arrington (1984), 14 Ohio App.3d 111,115, the Sixth District Court of Appeals affirmed the trial court's decision granting the defendant's motion to suppress on the basis that police detectives had repeatedly misstated the law during a police interrogation. In Arrington, on one occasion during the interrogation the police told the defendant "if you weren't the one who pulled the trigger * * * it can be probational." The defendant was nonetheless charged with offenses that carried non-probational mandatory sentences. On appeal, the Sixth District Court of Appeals held that misstatements of the law had improperly induced the defendant into making incriminating statements. On that basis, the Court held that the confession was involuntary.
In the case sub judice, however, Officer Meek did not specifically inform the appellee that if the act had been consensual, he would not be charged with a criminal offense and would be released from custody. Officer Meek merely informed the appellee that "[i]f it were consensual sex, that was different" and that if it was consensual sex "[w]e can wrap this up and get out of here." The foregoing statements are not misstatements of the law. Furthermore, it is axiomatic that the use of deceit by the authorities is not conclusive in a voluntariness determination. Cooey, 46 Ohio St.3d at 27. Indeed, like other allegations of police activity, it is merely one of the relevant factors bearing on the issue. Id; see, also, Frazier v. Cupp
(1969), 392 U.S. 731[394 U.S. 731], 739.
In other words, where all the circumstances surrounding the confession indicate that it was made voluntarily, the confession is admissible even though the police may have lied to the accused. See, e.g., State v. Wiles (1991), 59 Ohio St.3d 71; see, also,State v. Ward (July 31, 1996), Lorain App. No. 95CA006214, unreported. For the foregoing reasons, we cannot say that Officer Meek's statements, whether intentionally deceptive or not, presumably led the appellee to believe that, because the act was consensual he would not be charged with a criminal offense and would be released from custody.[4]
In granting the appellee's motion to suppress, the trial court also found that the appellee had been placed in isolation for over seven hours without food, water, or the use of a bathroom facility. We find the trial court's conclusion unsupported by the record. A careful review of the timeline of events which had occurred on the morning in question reveals that the appellee had been placed in a holding cell at approximately 4:03 a.m. and was transported to the Logan County Jail at 8:16 a.m. Although the appellee had been isolated for more than four uninterrupted hours, there is no evidence in the record that he had requested food, water, or the use of a bathroom facility during the period of isolation. Therefore, we cannot say that he was subjected to physical deprivation or mistreatment. In conclusion, after reviewing the record, and upon considering the totality of the circumstances, we find that the appellee's statements were voluntary in all respects.
Accordingly, the State's sole assignment of error is well-taken and is sustained.
Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
 ______________________ HADLEY, P.J.
SHAW and BRYANT, JJ., concur.
[1] The appellee was indicted under R.C. 2907.02(A)(1)(c), which states, in pertinent part, as follows:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 (c) The other person's ability to resist or consent is substantially impaired because of a mental * * * condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental * * * condition * * *.
[2] In his motion to suppress filed on January 28, 2000, the appellee also contends that his statements were obtained as the fruit of an unlawful arrest. The appellee, however, does not raise this issue on appeal.
[3] In his brief, the appellee also maintains that the statements made by him had been improperly induced on the basis that he had been placed in a holding cell for an extended period of time without food, water, or access to a bathroom facility. Although the appellee did not raise these arguments in his original motion to suppress, we have nonetheless decided to address the issues on the basis that the trial court relied upon them as reasons for granting the appellee's motion to suppress.
[4] Furthermore, the appellee is a mature adult, and although he has had no prior dealings with the justice system, he was informed on more than one occasion that his statements could be used against him.